UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD W., <br>       Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br>       Defendant. | § <br> § <br> § <br> §   Case # 1:19-cv-1000-DB <br> § <br> §   MEMORANDUM DECISION <br> §   AND ORDER <br> § |

## INTRODUCTION

Plaintiff Edward W. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 15).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 13. Plaintiff also filed a reply brief. *See* ECF No. 14. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is **GRANTED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 13) is **DENIED**.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on May 8, 2015. Transcript ("Tr.") 177-86. In both applications, Plaintiff alleged disability beginning March 31, 2015 (the disability onset date), due to "bi-polar with psychosis; hypertension; schizophrenia, undifferentiated type; and cocaine/alcohol/nicotine dependence." Tr. 67. Plaintiff's claims were

denied initially on December 16, 2015 (Tr. 65, 66), after which he requested a hearing (Tr. 91). Administrative Law Judge Mary Mattimore (the "ALJ") presided over a hearing in Buffalo, New York, on July 3, 2018.  Tr. 10, 32. Plaintiff appeared and testified at the hearing and was represented by Jeanne Murray, an attorney. *Id*. Dawn Blythe, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on August 6, 2018, finding that Plaintiff was not disabled. Tr. 10-22. On May 31, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's August 6, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her August 6, 2018 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2020;

2. The claimant has not engaged in substantial gainful activity since March 31, 2015, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.);

3. The claimant has the following severe impairments: bipolar disorder; major depressive disorder; post-traumatic stress disorder ("PTSD"); schizophrenia; and substance induced mood disorder (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform low stress jobs defined as simple routine work and make simple workplace decisions, but not at production rate (assembly line) pace. The claimant can tolerate only minimal changes in workplace process and settings. In addition, the claimant is able to tolerate occasional interaction with supervisors but can only interact 10% or less of the day with coworkers or the public. The claimant cannot perform tandem or team work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born on September 10, 1963 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a);

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 31, 2015, through the date of this decision (20 CFR 404.1520(1) and 416.920(1)).

Tr. 10-22.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on May 8, 2015, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 21. The ALJ also determined that based on the application for supplemental security benefits protectively filed on May 8, 2015, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 22.

## **ANALYSIS**

Plaintiff asserts three points of error. First, Plaintiff argues that the ALJ failed to account for limitations in social interaction assessed by treating psychiatrist Lauren Derhodge, D.O. ("Dr. Derhodge"). *See* ECF No. 10-1 at 16-19. Plaintiff also argues that the ALJ failed to conduct a specific stress analysis. *See id*. at 20-21. Finally, Plaintiff argues that the ALJ erred in giving little weight to the treating source opinion of Jeffrey Grace, M.D. ("Dr. Grace"). *See id*. at 21-26.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

For the reasons set forth below, the Court finds that the ALJ erred in failing to reconcile her RFC determination with Dr. Derhodge's assessed limitations in interacting with others. Although the ALJ assigned Dr. Derhodge's opinion significant weight, she did not include all of Dr. Derhodge's limitations, nor did she explain her rationale for rejecting a portion of the opinion. This error necessitates remand for further administrative proceedings as set forth below.

On June 19, 2018, treating psychiatrist Dr. Derhodge completed a Medical Examination for Employability Assessment form. Tr. 598-99. She indicated she had been treating Plaintiff for 13 months with biweekly one-on-one counseling, group counseling three times per week, and medications for the diagnoses of major depressive disorder and PTSD, alcohol use disorder in remission, and cocaine use disorder in remission. Tr. 599. The form contained three levels of limitation: none, moderately limited, and very limited. *Id*. Dr. Derhodge opined that Plaintiff was moderately limited in maintaining attention and concentration, maintaining socially appropriate behavior, and functioning at a work setting at a consistent pace and very limited in interacting appropriately with others. *Id*.

As noted above, the ALJ determined that Plaintiff retained the RFC to perform a full range of work as defined in 20 C.F.R. 404.1567(b), 416.967(b), but with several non-exertional limitations, including only occasional interaction with supervisors but no interaction more than 10% of the day with coworkers or the public; and no tandem or team work. Tr. 15. Plaintiff argues that, based on Dr. Derhodge's assessment, the ALJ should have limited Plaintiff to less than occasional interaction with supervisors, as she assigned significant weight to Dr. Derhodge's opinion. *See* ECF No. 10-1 at 16. Accordingly, Plaintiff argues, the ALJ's decision was not supported by substantial evidence. *See id*.

An ALJ must consider all "relevant evidence," to make a disability determination. 20 CFR § 404.1527. Generally, an ALJ must "reconcile discrepancies between her RFC assessment and medical source statements." *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006). When the RFC conflicts with a medical opinion, an ALJ must "explain why the opinion was not adopted." *Id*. While an "ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' [s]he cannot simply selectively choose evidence in the record that supports [her] conclusions." *Id*. (citing *Gecevic v. Secretary of Health & Human Servs.*,

882 F.Supp. 278, 286 (E.D.N.Y. 1995)); see *Caternolo v. Astrue*, No. 6:11-CV-6601 MAT, 2013 WL 1819264, at *9 (W.D.N.Y. Apr. 29, 2013) ("It is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination.") (internal quotations omitted). "Thus, when an ALJ adopts only portions of a medical opinion, he must explain why he rejected the remaining portions." *Dotson v. Berryhill*, No. 17-CV-129-FPG, 2018 WL 3064195, at *3 (W.D.N.Y. June 21, 2018) (citing *Raymer v. Colvin*, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) (remanding when ALJ accepted a portion of a medical source statement, but ignored the specific limitations); *see Evans v. Berryhill*, No. 16-CV-801 (MAT), 2018 WL 1377122, at *4 (W.D.N.Y. Mar. 19, 2018) (remanding when ALJ granted non-examining opinion great weight, but his mental RFC contradicted this opinion).

The ALJ gave Dr. Derhodge's opinion significant weight, noting that it was "generally consistent with the record and with the performance of simple routine work that is low stress in nature." Tr. 19, 599. However, despite assigning significant weight to Dr. Derhodge's opinion that Plaintiff was very limited in interacting with others (Tr. 599), the ALJ still found that Plaintiff could occasionally interact with supervisors and would be able to interact with coworkers and the public less than ten percent of the time (Tr. 15). As such, the ALJ's RFC did not explain how she translated Dr. Derhodge's limitation of "very limited in interacting with others" to a limitation of occasional interaction interacting with supervisors. Additionally, it is unclear how the ALJ differentiated between the occasional interaction with supervisors and a less than 10 percent interaction with the public. The ALJ was required to either explain why she included less limitations interacting with others than called for in Dr. Derhodge's opinion or include all the limitations interacting with others. *See Dotson v. Berryhill*, 2018 WL 3064195, at *3. Accordingly,

7

the Court finds that the ALJ erred by failing to fully explain her rationale for the assessed limitations.

Furthermore, other evidence in the record suggests greater limitations than those assessed in the ALJ's RFC. For example, Plaintiff regularly reported feeling uncomfortable around people. Tr. 496, 304, 502. He had thoughts of hurting his roommate. Tr. 309. He reported that when he worked in a restaurant, he believed people would watch him, sabotage him, or simply want him to fail. Tr. 312. He reported difficulty just being next to people in a work setting. Tr. 312. He would look behind him, as he believed people were after him. Tr. 473, 493. He would feel that people were watching him. Tr. 489, 496. Examinations also showed that Plaintiff's mood and affect were always anxious, depressed, irritable, or otherwise abnormal. Tr. 477, 480, 483, 490, 494. Examinations also revealed impaired or limited insight and judgment. Tr. 315, 477, 480, 483, 494, 490. As noted above, it is unclear how the ALJ reconciled these findings with an RFC limiting Plaintiff to occasional interaction with supervisors and less than 10 percent interaction with the public. Accordingly, the Court is not convinced that the ALJ fully reviewed and considered Plaintiff's psychiatric treatment records. *See Veley v. Colvin*, No. 1:13-CV-01204 (MAT), 2016 WL 8671963, at *7 (W.D.N.Y. Jan. 29, 2016) (citing *Nix v. Astrue*, 2009 WL 3429616, *6 (W.D.N.Y. Oct. 22, 2009) (noting that an ALJ may not engage in a "selective analysis of the record" and "may not ignore an entire line of evidence that is contrary to [his] findings") (internal quotation marks omitted)).

Based on the foregoing, the Court does not find that there was substantial evidence to support the ALJ's limitation of occasional interaction with supervisors and is left without a clear indication of how the ALJ reached the RFC determination. Tr. 15. Accordingly, the Court finds that remand is required for the ALJ to fully account for Dr. Derhodge's opinion that Plaintiff was

very limited interacting with others and reconcile that opinion with the ALJ's finding of less than occasional interaction with supervisors.

Because the Court has already determined, for the reasons discussed above, that remand of this matter for further administrative proceedings is necessary, the Court need not address Plaintiff's second and third points of error. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted*); Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, *261 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

*[signature]*
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE